24-507-84 United States of America v. Miguel Angel Delgado Jr. We'll hear from Mr. Fender. Okay. Good morning. You may please the court. Officer Miguel Delgado was convicted of three counts of deprivation of rights under color of law under 18 U.S.C. 242 and one count of destruction, alteration, and falsification of records in a federal investigation under 18 U.S.C. 1519. All of these charges stem from Officer Delgado's service for for customs and border protection at the U.S.-Mexico border. As to the first two counts under 242, the government failed to prove beyond a reasonable doubt that Officer Delgado's use of force was objectively unreasonable. As to the count under 1519, the government failed to prove beyond a reasonable doubt that Officer Delgado acted with the requisite intent to impede, obstruct, or influence an investigation. I will address the counts under 242 first. The Supreme Court said in Barnes v. Felix that deciding whether a use of force was objectively reasonable demands a useful, demands careful attention to the facts and circumstances relating to the incident as then known to the officer. I will therefore describe the salient facts surrounding the two counts. So there were two incidences, a 2019 incident and a 2020 incident. So in the 2019 incident, Dr. Thomas Espinosa and his wife were re-entering the United States at the Bridge of America's point of entry. Espinosa's wife could not find her resident card and the couple were referred to passport control secondary. The couple arranged for someone to bring the wife's resident card. Espinosa and his wife were instructed to, by a female officer to sit and wait in the back of the secondary, but the couple did not follow this command. When the female officer again instructed the couple to sit in the back, Espinosa flipped off the female officer and made a vulgar comment. Do you, do you agree, what is the standard by which we review what the facts, facts are here? Uh, in the light most favorable to the prosecution, correct. Okay. I still think it's important to understand the context of this. It is a de novo review, though, uh, the most favorable to the prosecution. And when we're looking at the situation, we have to understand all the facts on the ground leading up to this. We are familiar with the facts. Okay. You're free to, it's your argument time. You do what you think is best for your client. Okay. Okay. So first under fourth amendment jurisprudence, uh, it's long been recognized the right to make an arrest or an investigator, investigatory stop necessarily carries with it, the right to use some degree of physical coercion here. Do you agree with the account of the facts that there was physical coercion here with Espinosa was the first one, right? Correct. Yes, I mean, if you look at the video, right, the guy had, had one drink is what he says, but it almost looks like he stumbles into the door versus, um, Mr. Delgado shoving him into the door. But do you quibble with that factual account? I mean, are you saying there's clear error there or are you just accepting that the use of force was, you know, reasonable? Um, I guess a couple of things. One, I would say that, um, approximately 18 seconds elapsed from the end of the physical altercation in the secondary area that resulted in, uh, Espinosa being handcuffed and the incident that forms the basis of the conviction against him in that particular account. So I think it's a fluid situation. I don't know that, uh, uh, he's continued and not continued to be uncooperative, but you see my question is trying to apprehend your argument. Are you saying there's clear error in the account of the facts or are you saying no force was used and force was used including banging his head on the door or coming in contact with the door? I'm not sure what the video really shows. There is a difference to that argument. And I agree. I think that there was some force used in redirecting him and I think that Espinosa stumbles and collides with the door. So I do think that there was some force used in the pulling him back to direct him to the area that the officer wanted to go. I think he was perfectly within his to do that, to redirect Espinosa. Espinosa stumbles, collides with the door. I don't think that, uh, under any standard that that can be determined to be an unreasonable use of force. I also would say that, um, this court has stated that to be reasonable is not to be perfect. And so the fourth amendment allows for some mistakes on the part of officials. So even if the, um, pulling him back to redirect him towards the door was maybe a little too forceful, I don't think that rises to the level of a violation of the fourth amendment. Um, I think that they were in a fluid situation. He's trying to get him from the secondary to a controlled area. He redirects him. Espinosa stumbles and hits the door. I don't, I mean, you concede it's a fluid situation and that he's been handcuffed already. Right. And then you've got this evidence in the case testimony that by an expert, I guess that says this force was excessive. You've got the supervisor, I think in this case saying, uh, yeah, I thought it was out of line or I may be conflating the two incidents, but I think there's a supervisor testimony there as well, or some other agent testimony. We've got to look at, at this thing most favorably to the verdict, to the conviction and for the government. So isn't there evidence that is sufficient to support the conviction on that count? I don't think when you look at the video, which is the best evidence, but we don't take that the video is the conclusive evidence, do we? This isn't like a, a summary judgment or motion to dismiss Scott situation. This is a full on verdict, right? But, uh, this court has said in context is when we're viewing a verdict that the video is the, is the best evidence. And when there's disputed events of the account that the video is what we go to, to determine, uh, what was reasonable in that particular situation. If the video showed facts that were directly contrary, then we could rely on the video under Scott and its progeny. Right. But if the video is not showing directly contrary facts, then it's just one of many pieces of evidence. And it's actually, we've never said it in the context of a verdict. That's usually on summary judgment and it's a dispute in the circuit right now on whether it counts on 12 B six, but, um, so, but even assuming it did apply, it wouldn't apply to override everything else. I think it was directly contrary to the extent there's some vagueness on whether or not he was slammed or he fell, we have to defer to the verdict unless it were abundantly clear. I would say that it, it contradicts a Spinoza's account of this, of the incident. So there is, uh, a dispute and, and, um, the evidence, you can look at the video stipulate, I guess, that he was being led and he was, he stumbled into the door. Cause I mean, I, what I recall is that most of the complaints, the lightheadedness, all the, all the injury comes from the door, the head on the door, stipulate that he stumbled into the door, but, but the video still shows, um, officer Delgado guiding him. And you said, even if it was, it wasn't perfect, it may have been forcefully so, but then you've got this other evidence that can be harmonized with the actual video account. It seems sort of ambiguous, right? I would say that the, that the, that the, um, video clearly shows that officer Delgado redirected, uh, the, the suspect he stumbled and collided with the door. I think on the, the clear evidence of the video itself, it shows as a matter of law that what Espinosa or pardon me, what Delgado did was not a violation of the fourth amendment, regardless of what the other testimony shows. Um, moving to the 2020 incident. Again, we, we look into the, um, reasonable of police force analyzing the totality of the circumstances in terms of, um, Estrada. I think an important circumstance here that needs to be taken into consideration is the location of the incident, which is a port of entry at the U.S.-Mexico border. The U.S.-Mexico border is an inherently dangerous place and the CB, uh, CBP officers are charged with carrying out their duties in a particularly dangerous context. Officer Delgado was faced with an individual who he understood to be potentially involved with narcotics and drug smuggling. Officer Delgado perceived that Officer Delgado chose to detain Estrada and place him in handcuffs and to effectuate this detention, Delgado physically took Estrada down. As this court again affirmed in Bailey v. Ramos, the fourth amendment gives law enforcement officers fair leeway for enforcing the law and the community's protection. It was not objectionably, objectively unreasonable for a CBP officer enforcing the law at the U.S.-Mexico border to utilize physical force to take an down and place him in handcuffs when the CBP officer knew that the individual might be involved in drug trafficking. And when the officer perceived that the individual was threatening a federal federal officer while you have time left, I hope you'll address, uh, any, whether there were any falsehoods in the report that was filed and whether Delgado lied to his supervisor. I will your honor. Um, and I'll just quickly finish this up and then I'll get to the 1519 charge. No, I'd really rather you go ahead and move to the, to, to the other. Okay. I'll do that. Um, so to obtain a conviction under 1519, the government is required to prove by a reasonable doubt that the defendant made a false entry in a record document or tangible object. The defendant did so knowingly and the defendant intended to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of any department or agency of the United States. One of the alleged falsehoods was that Delgado wrote that he turned Estrada in his chair to place him in hand, hand restraints. But the expert found on the footage that Estrada appeared to be on his knees with his head up against the back of the chairs and the wall and was not sitting upright until he got handcuffed. So in this situation, we're not, we're only disputing that the express language of the step that he did, he did not make the statement with a specific intent to impede, obstruct, or influence a matter. So we're not trying to argue that any of his statements are or are not false. I'm not conceding anything, but that's not our argument. Our argument is that the government failed to prove beyond a reasonable doubt that Officer Delgado acted with the requisite intent. So the government generally showed that Delgado completed the incident log related to the 2020 encounter with Estrada and that it was subsequently reviewed. The other supposed falsehood was that Delgado wrote that Estrada kept pushing back, but the expert didn't notice any movement to indicate that Estrada was resisting or pushing back against Delgado. Right. And again, we're not, we're not trying to say that the document was or was not false. We're just merely trying to argue that there was no intent to obstruct a federal investigation. What about whether he lied to his supervisor? There was no evidence that he was, that was in the context of an investigation, that the supervisor had said, we need to review this, that Delgado knew that these incidents were going to be reviewed. Whether they were going to be reviewed or not, I'm just asking the question, is there evidence that he lied to his supervisor at any point about anything? The incident that he, the account that he gave in the log was repeated to his officer and that is on video. So what is the answer to Judge Smith's question? Is there any evidence that he lied? He, he told his account of events to his supervising officer. That's correct. Could someone say that it was a lie because his account of events did not match the facts as found by the judge at the bench trial? Somebody could say that, yes. And does that make the claim not work? That makes the claim not work if the government did not prove an intent to obstruct an investigation. So the government did not produce evidence that as part of his training, Officer Delgado was taught that incidents involving use of force might be subject to investigation or review. None of the statements made by Delgado, either verbally or in writing, evidence that he was making these statements in relation to an investigation, even a possible investigation in the future. And the government did not show that Delgado made a false statement in response to an inquiry from an agency or any federal agency. I think this is really important in this context because otherwise any potentially false entry in a document or statement made that subsequently becomes part of a federal investigation could expose the author to criminal liability under 1519. Under the statute, under the express languages of the statute, you have to show an intent to obstruct. In order to show an intent, you have to show that the officer contemplated that there at least might be some kind of federal investigation in the future. Here there is no evidence in the record to support the contention that Delgado knew that this was going to be subject to any kind of review or investigation. They could have simply done that by having somebody get up and say, as a matter of course, the CBB reviews these incidents in the following manner. As part of his training, Officer Delgado was taught that. He knew that this was coming. So in falsifying the record, if he did so, he was doing so with knowledge that this was going to be ultimately reviewed. There's nothing in the record that remotely shows that that kind of evidence was introduced and that Delgado knew that this was ultimately going to be subject to investigation. Just showing that the statement is false is not enough under the plain language of the statute. I only have 15 seconds, so if there's no other questions, I'll yield the balance of my time. Thank you. You saved time for rebuttal. May it please the Court. Zachary Richter for the United States. As Chief Judge Elrod pointed out at the beginning, this Court looks at the evidence in the light most favorable to the verdict, and that includes video evidence. For instance, in this course 2023 opinion in Bagley, this Court considered an excessive force claim in the context of a summary judgment, and this Court ruled that when there is video evidence of an event, and the video evidence could be viewed in one of two different ways, that this Court looks at the video evidence in the light most favorable to the, whether it's a material dispute of fact or to the verdict. But here, the video evidence, to speak to Judge Wilson's question, I think can be interpreted in a way consistent with the verdict. In fact, we would say that it conclusively shows that the evidence is correct, in that we have an individual who is compliant, who is trying to follow the officer's instructions, and is being pushed in front of the officer, who is then thrown into a wooden door and leaves scuff marks on the ground, which are visible in the video. And I would commend you to the government exhibit 2D, which shows exactly when this occurs. And at a minimum, that can be viewed as Officer Delgado, reasonably viewed as Officer Delgado, throwing this individual into the door. That may be an overreading. I mean, it looked like this guy was drunk and he sort of stumbled into the door. But I apprehend counsel opposite to say they're not disputing that Officer Delgado is using force to guide him, at least. But I don't know that that's critical for your case in any event, because the video is what it is. You've other evidence, correct? That's right, Your Honor. And just to the point of... What did his supervisor say with regard to this event, the Espinoza event? With respect to Dr. Espinoza, the supervisor also said that that was force unbecoming of an officer and that was misconduct. That was the very end of the supervisor, Mr. Ferguson's testimony. Does that necessarily arise to unreasonable force or excessive force? The standard is constitutional, and the standard is one of an objective officer. So it wouldn't make a difference necessarily that the supervisor said one thing or the other, but it further reinforces the verdict that this was an unreasonable use of force. And when you apply the constitutional standard, looking at an objective officer going to the objective officer's shoes, this Court has held again and again in Bagley and Bush and Curran, Bush and Curran are somewhat similar situations to this one, that it is a violation of clearly established law to use this kind of force on a compliant person. And the evidence in the light most favorable to the verdict shows that these were people who were compliant. The attempt to say otherwise is just not viewing the evidence in the light most favorable to the record. With respect to an ebriation for both individuals, both individuals testified that they were not drunk. That has to be taken in the light most favorable to the verdict. Dr. Espinosa's wife testified that he was not drunk. That has to be taken in the light most favorable to the verdict. The idea that Dr. Espinosa adopted some kind of hostile posture was denied by Dr. Espinosa and is not contradicted by any record evidence. And in fact, the idea that he was unruly or noncompliant when he was being slammed into the wall is also not supported by any record evidence. And in fact, record evidence supports just the opposite conclusion. With respect to Mr. Estrada, it is important to take into account the border context, but also the fact that we're not, as we were in United States v. Brooklyn or United States v. Diaz, out in the field in the midst of a fluid arrest. And even in those cases, this court ruled that it was clearly established that the officers there could not use force, violent force, on a compliant subject. So here we have an officer who is in a government facility with two individuals who have presented their IDs for inspection. The officer has the IDs of these individuals, and they're within this facility, and there are other officers around. Even if you zoom out under Barnes v. Felix and you look at the whole course of events that occurred here, you see that Officer Delgado is pretty consistently the aggressor here. And he, for instance, when he says, oh, I perceive a threat, in viewing the evidence in light most favorable to the verdict, you can certainly see how that was pretextual. He, if he had honestly believed that there was a threat to him, then leaving a secured area where he's behind glass and behind a barrier to go through a locked door that only he can access, the public can't access, and then approaching an individual who hasn't been patted down and who hasn't been otherwise physically inspected, and then bringing that individual into a secure location and doing all of that by himself with no backup, none of that suggests that Officer Delgado honestly perceived that there was a threat there, nor does it show that an objectively reasonable officer would have perceived that there is a threat there. When this Court has considered threat as part of the Fourth Amendment analysis under Graham v. Connor, it has always been about the immediacy of the threat. And however you interpret Mr. Estrada's statement, they could not be interpreted as an immediate threat in that moment to Officer Delgado. Turning to the questions about obstructive intent, there were multiple false statements, Judge Smith, in the account, and the most demonstrably false is what Officer Delgado told his supervisor at the, when the supervisor asked immediately after the incident that he had seated Mr. Estrada in a chair, and then he turned him around, and that's when Mr. Estrada was injured. That can't be a question of memory or characterization. That's simply a falsehood on the facts, and a reasonable fact finder could infer that it was done with obstructive intent. The same misstatement appeared in Officer Delgado's report. And then there are other misstatements that both the expert and Officer Delgado's supervisor both said were mischaracterizations, false statements about what occurred. For instance, that Mr. Estrada approached Officer Delgado in an aggressive manner and got in his face, that Mr. Estrada tried to push Officer Delgado off of him. And all of these compound to show that Officer Delgado is presenting a false narrative. When you have an experienced officer, this is a person who, as of 2020, has been a Customs and Border Protection officer for 13 years, who is confronted with somebody that he has just used force on and who is now bleeding profusely from the nose and the face, and his supervisor comes and says, what happened, it's not a far to infer that when the officer responds with falsehoods that that officer has obstructive intent. And it's certainly not outside of the realm of a reasonable fact finder's inferences to infer that that officer has obstructive intent when the officer doubles down on that statement in a report that his supervisor has asked him to write. A reasonable person in the officer's shoes at that point knows that something is being investigated here. And by the way, in the Supreme Court's decision in Pugin v. Garland, the Supreme Court clarified that the investigation doesn't have to be ongoing at the time that the falsehood is made, because obstruction, the Supreme Court pointed out, is most effective when you prevent the investigation from even getting underway. The investigation under the terms of the statute only has to be contemplated. And certainly an experienced officer who is asked by a supervisor what happened and told by the supervisor to write a report about what happened, what caused this injury that caused us to call paramedics to the port of entry, that that officer contemplates that there is going to be an investigation and that those falsehoods are designed to obstruct the investigation. And I wanted to address briefly as well the point about any false statement automatically resulting in liability under Section 1519. All the time, this Court looks at a defendant's entire course of conduct and draws from certain evidence, say the presence of drugs in a vehicle or the defendant's conduct in some other respect, falsehoods, a whole panoply of elements. So the fact that the falsehoods establish both the element that there was a false report and the element of unlawful intent, obstructive intent, is not unusual in this Court's precedent. And here we know from this Court's case in Stoker that inferring unlawful intent from the circumstances is perfectly proper. Unless the Court has further questions, I'll yield the remainder of my time and urge you to affirm the judgment of the District Court. Thank you. So just briefly, I'll respond to a couple points. In response to characterizing Espinoza as being compliant, I think the evidence shows that he was not being compliant with officers in the secondary. Delgado's supervisor testified that Espinoza was being non-compliant in the secondary. The supervisor testified that Delgado did not do anything improper when he put his hands on Espinoza, took him down, put the handcuffs, and escorted him to the secure location. 18 seconds elapsed between that apprehension and the incident that forms the basis of the complaint. So the Supreme Court has said that there's no on-off switch when it comes to analyzing the totality of the circumstances in a Fourth Amendment case, to say that the switch goes off as soon as the handcuffs are placed and Delgado is no longer able to effectuate any kind of force and effectuating the detention, I think, is incorrect. And I think that he was certainly within Fourth Amendment bounds when he redirected Espinoza. Espinoza stumbled and hit the door. Witnesses testified to the contrary, didn't they? The supervisor and one other person. In terms of the redirecting and the hitting of the door. But the conduct was not reasonable in any way. That would be incorrect. His supervisor did testify that when he initially approached Espinoza and took him into custody, that that was appropriate. And that's specifically what I was referring to. Initially. Correct. But the supervisor and the expert witness both said that the behavior was not reasonable nor necessary at the time of the. Of the contact with. And that's correct. And I would say that. That's a problem. It is a problem. For overturning a verdict. It is a problem for overturning a verdict. I do think, though, when you look at the video evidence, um, even with the contrary testimony, it supports our position. In terms of Estrada being compliant, um, he had threatened, Delgado had perceived him to be threatening him. There was an argument back and forth. He said that you're not the boss, et cetera, et cetera. Delgado did move out to effectuated attention of him. At what point can a federal officer, when somebody is lobbying threats at him, go to deal with that situation without violating Fourth Amendment protections? I think that just because he was behind a locked door doesn't prevent him from going to address that situation in that particular context, especially given what he understood um, to be going on with Estrada having a previous drug charge. And then finally, um, in terms of 1519, again, the element of the crime is proving an intent to obstruct a federal investigation. There has to be some evidence that the defendant knew even that there was a possibility of an investigation in the future. Otherwise, that element of the statute would be, um, unnecessary if all you had to show was that there was some kind of false statement made. There was no evidence in the record that Delgado had any awareness that an investigation was going to happen in the future. Even if he did make a false statement to a supervisor or a false statement in a report, that alone is not sufficient to convict him under 1519. If there's no other questions, I'll yield the balance of my time. Thank you very much. We appreciate the arguments in this case. This case is submitted. The next case.